### TATUM *v*. TOWN OF TAMAROA.

(*Circuit Court, S. D. Illinois.*   July, 1880.)

1. STATUTORY CONSTRUCTION.

   The granting in a statute of privileges and powers recited in a prior statute does not include the privileges and powers recited in a statute amendatory to the prior statute.

2. MUNICIPAL CORPORATIONS—INCORPORATION ACTS.

   Where a statute incorporating a town declares that such town shall have all the rights, privileges, and powers conferred upon a town previously incorporated, the later incorporation act does not include the power conferred on the prior incorporated town by an act amending its act of incorporation, although the amendatory act has passed prior to the later incorporation act.

3. PROVISO IN STATUTE.

   A proviso in a statute which limits the authority of a town, and which limit is inconsistent with a power previously given, controls the general terms of the statute.

Suit upon Municipal Bonds.

*H. Tompkins*, for plaintiff.

*Henry Clay*, for defendant.

DRUMMOND, C. J.   If there was authority to issue the bonds in this case and incur this indebtedness at all, it must have been by virtue of the act of 1859 incorporating the town of Tamaroa.   That act declared that the inhabitants of that town were a corporation, with "all the rights, privileges, and powers conferred upon the town of Havana, in the county of Mason, approved February 12, 1853," and that all the provisions of the act aforesaid were applicable to the said town of Tamaroa.   The words "by the act" seem to be left out.   No doubt, however, this language refers to the act of February 12, 1853. There is a proviso that the trustees of the town of Tamaroa shall not levy more than one-half of 1 per cent. tax upon the real estate within the limits of said corporation.   This act clothed the corporation of Tamaroa with all the privileges and powers conferred by the act of 1853, on the town of Havana, while the act of 1853 confessedly did not confer upon the town of Havana the right to issue bonds for

the construction of a railroad, and so by the terms of the act of 1859 no power was given to the town of Tamaroa to issue bonds for such a purpose. An amendment, however, to the act of 1853, incorporating the town of Havana, passed in 1857, did authorize the town of Havana to subscribe stock to any railroad that might be located in or through, or terminate at, that town; and the question is whether a fair construction of the act of 1859 is that the legislature intended to give to the town of Tamaroa, as it had given to the town of Havana, the right to subscribe stock for the construction of a railroad through, or terminating in, the town.

If so, it is by construction only, because the act incorporating the town of Tamaroa refers specifically to the act of 1853, and we would be compelled to assume by inference that it was the intention of the legislature to incorporate into the law of 1859, the amendment to the law of 1853, so as to clothe the corporation of Tamaroa with the same powers that were conferred by the amendment to the act incorporating the town of Havana. But considering the special reference to the act of 1853, and also the limit as to the power of taxation contained in the act of 1859, in respect to the property in the town of Tamaroa, we do not think that is a fair construction of the law.

It could hardly be said to be in the contemplation of the legislature when it passed the act of 1859, and clothed the corporation of Tamaroa with power, by reference to another act, specifying the date when that act was passed, that it included within it all the powers conferred by an amendment to that act, one of which was that of subscribing to the stock of a railroad, and thereby authorizing the town authorities to impose the necessary taxes to pay for the debt incurred by such a subscription, in the face of the proviso referred to limiting the power of taxation upon property within the town.

We are referred to a case of *Humphrey* v. *Pegues*, 16 Wall. 224, in which it is said the supreme court made such a ruling that by relation and by inference there must be included in the act of incorporation of Tamaroa in this case the amendment to the act referred to, incorporating the town of Havana. But in that case the court held that the amendment was incorporated in the subsequent act, because the act referred to "the charter" of the company in this language: "All the powers, rights, and privileges granted by the charter of the Northeastern Railroad Company are hereby granted to the Cheraw & Darlington Railroad Company, and subject to the conditions therein contained;" and inasmuch as there had been an original act by which there were certain privileges granted to the company, and

an amendment made by which those privileges were increased, it was to be considered altogether as the charter of the company, and by a reference to the word "charter" the whole charter of the company was to be considered together, whereby the amendment became an integral part of the original charter, so that by reference to the charter in that way the subsequent law incorporated the amendment as well as the original act. Suppose, however, the language of the law in that case had been to confer all the rights and privileges of a charter referred to by the date as part of the description: then it might be said it was somewhat similar to the case now before the court; but such was not the language there. If, for instance, this law incorporating the town of Tamaroa had declared that it was to have all the privileges and rights which the town of Havana had, without referring to a particular act, then it might be presumed that it referred to existing laws in force at the time that the corporate power was thus given to the town of Tamaroa. But, inasmuch as the act of incorporation in this case refers to a particular statute, we think it is scarcely inferable that it was in the mind of the legislature to give to the town of Tamaroa the right to subscribe to the capital stock of a railroad, and thereby impose additional burdens on the inhabitants of the town, especially when the very language of the act of 1859 limits the power of the town authorities to tax property within the town to not more than one-half of 1 per cent. Can it be fairly inferred, with such a limit upon the authority of the trustees, that the legislature intended to say that the town of Tamaroa should have the power to subscribe to the stock of a railroad, and thereby impose a tax on the people of the town, in the face of the express proviso to the act of 1859 defining the powers of the corporation? We think not. Therefore, if it were true that by a strained inference there was such an intention shown in the body of the act, still, there being a proviso of a limit upon the authorities of the town, which limit would be entirely inconsistent with a power previously given, the limit would control; the proviso would operate upon all previous language in the act. And so, without going further into this question, we hold that the plaintiff cannot recover.